**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LA TACHE SNELL-JONES, individually and on behalf of all persons similarly situated, ) ) ) | |
| Plaintiff, ) | |
| ) | No. 19-cv-00120 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| THE HERTZ CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff La Tache Snell-Jones is a former branch manager for Defendant The Hertz Corporation ("Hertz"). Snell-Jones claims that despite routinely working over 40 hours in a workweek for Hertz, she never received overtime compensation. Instead, Hertz treated her as exempt from the overtime provisions in both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* Therefore, Snell-Jones has brought the present collective and class action lawsuit against both Hertz and Defendant Haley Hudson alleging violations of the FLSA, the IMWL, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, along with claims for breach of contract and breach of the covenant of good faith and fair dealing. Hertz and Hudson have each filed motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 20, 34.) For the reasons that follow, Hertz's motion is granted in part and denied in part, and Hudson's motion is denied.

**BACKGROUND**

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Snell-Jones as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

As alleged in her complaint, Snell-Jones worked at Hertz, a worldwide vehicle rental company, from October 2013 until her allegedly retaliatory termination in September 2017. (Compl. ¶¶ 1, 10, Dkt. No. 1.) She began as a manager trainee and shortly thereafter was promoted to manager associate. (*Id.* ¶ 17.) By October 2014, Snell-Jones had been promoted to a branch manager position, which she held until her termination. (*Id.*)

Although Snell-Jones had a "managerial" title and some management responsibilities, in practice "she did not have any authority to hire or fire other employees, and her ability to make any suggestion or recommendation regarding hiring, firing, advancement, promotions or other change of status of other employees was used, if ever, infrequently, and not given any sufficient weight." (*Id.*) Instead, those responsibilities were predominantly exercised by others higher in the corporate hierarchy, including Hudson, Hertz's Human Resources Business Partner for Illinois (as well as Wisconsin, Minnesota, and Indiana). (*Id.* ¶ 19.) By contrast, Snell-Jones largely worked "as a front-line employee, processing rentals and returns, handling customer complaints, moving and arranging fleet (vehicles), including picking up and dropping off customers, locating and transporting vehicles[,] processing body damage to vehicles, and taking vehicles for repairs." (*Id.* ¶ 20.) Because of these responsibilities, Snell-Jones could devote only a minimal amount of time to actual management or executive tasks such as managing schedules, handling employee concerns, evaluating employees, or meeting with managers. (*Id.*)

During her time at Hertz, Snell-Jones was a salaried employee. (*Id.* ¶ 18.) For that reason, Hertz treated her as exempt from the overtime provisions of the FLSA and the IMWL. (*Id.*) Indeed, Hertz had a policy that salaried managers were not entitled to overtime for any hours they worked in excess of 40 hours per week. (*Id.* ¶ 21.) Nonetheless, Hudson maintained a policy under which all branch managers were required to work from open to close. (*Id.* ¶¶ 6, 22.) For Snell-Jones, that meant she worked from 7 a.m. to 6 p.m. for at least six days a week. (*Id.*) Thus, from October 2014 until her termination on August 14, 2017, Snell-Jones regularly worked in excess of 40 hours per week without ever receiving overtime. (*Id.* ¶ 24.) Moreover, in light of Hudson's policy requiring all branch managers to work full 11-hour days, 6 days a week, Snell-Jones contends that there are at least 100 other current or former Hertz branch managers under Hudson's supervision that have similarly been denied overtime. (*Id.* ¶¶ 22, 25, 29.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Snell-Jones has brought FLSA, IMWL, and IWCPA claims against both Defendants, whereas her contract claims are brought solely against Hertz. Together, Defendants seek to

dismiss all claims. The Court will first address the statutory claims against both Defendants and then proceed to the contract claims directed at Hertz.

## I.      FLSA and IMWL Claims

### A.      Hertz's Status as Employer

Hertz argues that Snell-Jones's allegation that Hertz was her employer is conclusory and supported by no facts. It further contends that Snell-Jones's claim is belied by a charge of discrimination she filed with the Equal Employment Opportunity Commission ("EEOC"), which lists a different entity known as Hertz Local Edition as her employer.

Both the FLSA and the IMWL make an employer liable for its failure to pay overtime wages. *See Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011). The FLSA defines an "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also Natal v. Medistar, Inc.*, 221 F. Supp. 3d 999, 1003 (N.D. Ill. 2016) ("[C]ourts employ the same test under both [the FLSA and the IMWL] to determine a defendant's status as an employer."). The definition is "broad and comprehensive in order to accomplish the remedial purposes of the Act." *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987).

According to Hertz, Snell-Jones's bare allegation that Hertz was her employer is insufficient to survive dismissal. It faults her for failing to provide basic allegations concerning her employment with Hertz such as: "(1) who hired [her]; (2) who paid her; (3) who supervised her; and (4) where she worked." (Def.'s Mem. in Supp. of Mot. to Dismiss 6, Dkt. No. 21.) However, Hertz points to no authority requiring such detailed allegations where a plaintiff simply alleges that she worked for a single corporate entity. Instead, Hertz relies for support on cases dealing with the situation where a plaintiff alleges a joint employment relationship involving two

or more businesses. *See Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1128 (N.D. Ill. 2017); *Gross v. Peoples Gas Light & Coke Co.*, No. 17-CV-3214, 2018 WL 558515, at *1–2 (N.D. Ill. Jan. 24, 2018); *see also* 29 C.F.R. § 825.106(a) ("Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA."). Here, Snell-Jones points to only one business, Hertz, as her employer. She states the dates she worked for Hertz, the positions in which she worked, and her duties. (Compl. ¶¶ 1, 17–20.) Those allegations sufficiently plead Hertz's status as Snell-Jones's employer.

Hertz further attempts to muddy a relatively simple issue by attaching as an exhibit Snell-Jones's EEOC charge concerning her purported retaliatory termination from Hertz. (Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. 1, Dkt. No. 21-1.) There, Snell-Jones identified her employer as "Hertz Local Edition" (*id.*), which Hertz claims is a separate entity. In response, Snell-Jones points to multiple documents that identify Hertz as her employer. (Decl. of John H. Ray, III, Dkt. No. 26.) Of course, those documents were neither attached to the complaint nor incorporated by reference. *See Marks v. CDW Comput. Ctrs., Inc.*, 901 F. Supp. 1302, 1309 (N.D. Ill. 1995) ("The complaint is deemed to include documents attached to it as an exhibit or documents incorporated in it by reference.") And the Court declines to convert the present motion into one for summary judgment by addressing the parties' factual dispute at this time. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Similarly, the EEOC charge is not attached to Snell-Jones's complaint and Hertz does not contend it is incorporated by reference. Nonetheless, Hertz asserts that this Court may take judicial notice of the charge. It is true that a court may take judicial notice of an EEOC charge.

*Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 989 n.2 (N.D. Ill. 2010). At the same time, however, a court may only take judicial notice of a fact that is not subject to reasonable dispute. Fed. R. Evid. 201; *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018). Thus, while the fact that Snell-Jones filed an EEOC charge is one of which this Court may take judicial notice, it is not the case that the allegations therein are not subject to reasonable dispute. Indeed, Snell-Jones's EEOC charge sets forth her own allegations of misconduct just like her complaint in this action. *See Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (noting that to bring a Title VII claim, a plaintiff must first "file a charge with the EEOC detailing the alleged discriminatory conduct"). Her identification of Hertz Local Edition as her employer in the EEOC charge is an allegation on par with her identification in the complaint of Hertz as her employer. That allegation cannot establish beyond reasonable dispute that Snell-Jones's employer was, in fact, Hertz Local Edition as opposed to Hertz. Because the Court cannot take judicial notice of the allegation in Snell-Jones's EEOC charge that Hertz Local Edition is her employer, her well-pleaded allegation in the complaint that Hertz is her employer must be accepted at true. For that reason, the Court will not dismiss Snell-Jones's FLSA and IMWL claims on the basis that Hertz is not Snell-Jones's employer.

### B.    Hudson's Status as Employer

In addition to Hertz, Snell-Jones also alleges that Hudson was an employer subject to liability under the FLSA and the IMWL. "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with FLSA." *Reich v. Harmelech*, No. 93C3458, 1996 WL 308272, at *3 (N.D. Ill. June 5, 1996) (internal quotation marks omitted). Moreover, the statutes define "employer" broadly enough to include an individual with supervisory authority over the plaintiff as a defendant, provided that individual "was

responsible in whole or part for the alleged violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); *see also Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700, 704–05 (N.D. Ill. 2016) (confirming that individual corporate officers can be held liable under the IMWL). In determining whether an individual is an employer, courts "evaluate the 'economic reality' of the employment relationship." *Harris v. Skokie Maid & Cleaning Serv., Ltd.*, No. 11 C 8688, 2013 WL 3506149, at *5 (N.D. Ill. July 11, 2013). In making the economic reality evaluation, several factors are considered, including whether the individual: "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1075 (N.D. Ill. 2014) (internal quotation marks omitted).

Snell-Jones alleges in the complaint that Hudson was "directly responsible for ensuring compliance with state and federal law and the proper application of employment laws." (Compl. ¶¶ 6, 15 (internal quotation marks omitted).) She also alleges that Hudson had at least some responsibility for hiring, firing, and promotion decisions and maintained the policy requiring branch managers under her supervision to work from open to close, which in Snell-Jones's case meant 11-hour workdays. (*Id.* ¶¶ 19, 22.) Finally, Snell-Jones claims that Hudson willfully failed to maintain records regarding Hertz's branch managers' hours and pay that the FLSA requires the corporation to keep and preserve. (*Id.* ¶¶ 24, 45–46.) Because of her failure, "overtime wages were not paid at all, for any salaried branch manager employees." (*Id.* ¶ 25.)

Together, the Court finds these allegations sufficient to plausibly plead Hudson's status as an employer. Snell-Jones's allegations adequately satisfy three of the four economic reality factors and only fail to address Hudson's role in determining the rate and method of payment. *See Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 698 (N.D. Ill. 2015) ("These four

[economic reality] factors . . . are neither dispositive nor necessarily weightier than any others."). And taken together, Snell-Jones alleges enough to show that Hudson's exercise of her supervisory authority played a significant role in the alleged FLSA and IMWL violations. *See id.* ("[T]he test is to look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee in a manner that caused the FLSA violation (at least in part)."). Specifically, Hudson was responsible for ensuring Hertz's compliance with employment laws, yet instituted a policy requiring branch managers to routinely work overtime for which they were not properly compensated. That is enough at this stage to plead Hudson's status as an employer.

### C.    Sufficiency of Allegations of Entitlement to Overtime Payments

Both Hertz and Hudson contend that Snell-Jones failed to adequately plead facts establishing that she ever worked more than 40 hours in a week and was therefore entitled to overtime compensation.

The FLSA and the IMWL's overtime provisions "require an employer to pay its non-exempt employees one and one-half times their regular rate of pay for any work performed in excess of 40 hours in one workweek." *Hancox v. Ulta Salon, Cosmetics, & Fragrance, Inc.*, No. 17-CV-01821, 2018 WL 3496086, at *2 (N.D. Ill. July 20, 2018) (citing 29 U.S.C. § 207(a)); *see also Divine v. Volunteers of Am. of Ill.*, 319 F. Supp. 3d 994, 999 (N.D. Ill. 2018) (citing 820 ILCS 105/4a(1)). To state a claim for failure to pay overtime under either statute, "a plaintiff must sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of forty hours." *Silver v. Townstone Fin., Inc.*, No. 14-cv-1938, 2015 WL 1259507, at *1 (N.D. Ill. Mar. 17, 2015).

Defendants fault Snell-Jones for failing to point to a single specific instance when she worked more than 40 hours in a workweek and instead alleging that she and certain other branch managers regularly worked in excess of 40 hours a week. However, Snell-Jones's allegations regarding her hours are more detailed than what Defendants portray. Snell-Jones does not simply allege that she regularly worked 40 hours a week. Instead, she alleges that Hudson had a policy requiring branch managers to work from open-to-close. As applied to Snell-Jones, the policy meant she worked 11-hour days, from 7 a.m. to 6 p.m., 6 days a week. While Snell-Jones does not complete the math, the Court does not need a calculator to figure out that Snell-Jones is alleging that she regularly worked 66-hour weeks. Therefore, she regularly worked 26 hours per workweek for which she was entitled to overtime pay that she did not receive. Perhaps there were some weeks that Snell-Jones worked less than 66 hours because she took time off or sick leave. Nonetheless, the fair and reasonable inference from her allegations is that throughout her career at Hertz, Snell-Jones worked 66 hours per week. Snell-Jones need not point to a particular week in which she worked 66 hours when the clear import of her allegations is that she did so nearly every week. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017) (declining to require "plaintiffs to identify a ***particular*** week in which they worked uncompensated overtime hours," so long as they "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week"); *Hancox*, 2018 WL 3496086, at *3 ("There is no requirement, however . . . that a FLSA plaintiff identify, by date, the specific weeks in which she was undercompensated; it is enough to allege that there was in fact at least one such week.").

The cases upon which Defendants rely address far more vague allegations, where the plaintiffs essentially claimed without further factual support that they regularly or at times worked

more than 40 hours a week without compensation. For example, in *Hughes v. Scarlett's G.P., Inc.*, No. 15-cv-5546, 2016 WL 4179153, at *2 (N.D. Ill. Aug. 8, 2016), the plaintiffs vaguely alleged that "[a]t such times as Plaintiffs worked more than forty hours in a week (and each did), they were not paid time and half." Similarly, in *Parks v. Speedy Title & Appraisal Review Services*, 318 F. Supp. 3d 1053, 1069 (N.D. Ill. 2018), the plaintiff "generally allege[]d that she worked overtime without sufficient pay" but did not "allege how many hours she worked in a week (and whether or not this was over forty hours) or how many overtime hours she worked without being paid the proper salary." By contrast, here, Snell-Jones has alleged that she worked 66 hours a week, 26 of which should have been overtime hours. Other courts have deemed similar allegations sufficient to survive dismissal. *E.g.*, *Diaz v. E&K Cleaners, Inc.*, No. 16-CV-07952, 2018 WL 439120, at *2 (N.D. Ill. Jan. 16, 2018) (finding allegations that plaintiffs worked 60-72 hours every week without receiving overtime to be sufficient to survive a motion to dismiss); *Labriola v. Clinton Entm't Mgmt., LLC*, No. 15 C 4123, 2016 WL 1106862, at *3 (N.D. Ill. Mar. 22, 2016) (declining to dismiss a plaintiff who alleged "that she worked approximately 54 hours per week during her first three weeks of work . . . but did not receive any overtime compensation during this period").

In short, the Court concludes that Snell-Jones has adequately pleaded that she worked 26 overtime hours a week for which she did not receive overtime compensation from Hertz. That is sufficient to state a claim under both the FLSA and the IMWL. Consequently, both Hertz and Hudson's motions to dismiss those claims are denied.

## II.     IWPCA Claim

### A.     Hudson's Status as Employer Under the IWPCA

Before considering whether Snell-Jones states a claim under the IWPCA, the Court first addresses Hudson's contention that she was not an employer for purposes of the Act. The IWPCA imposes liability only "upon employers, as that term is traditionally understood, and upon any officers of a corporation or agents of an employer who knowingly permitted the Wage Act violation." *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 901 (Ill. 2005). At this stage, the Court finds that Snell-Jones has adequately pleaded that Hudson knowingly permitted the IWPCA violation. As discussed above, Hudson was responsible for Hertz's compliance with employment laws. Yet, despite her awareness that Hertz did not pay branch managers overtime, Hudson instituted a policy requiring Snell-Jones and other branch managers to work over 40 hours in a workweek. *See Mouloki v. Epee*, 262 F. Supp. 3d 684, 699 (N.D. Ill. 2017) (observing that an employer's agents can be held liable under the IWPCA "as long as they had the right to control the manner and method in which the employee performed her work" (internal quotation marks omitted)). These allegations are sufficient to show that Hudson was a Hertz agent who knowingly permitted the IWPCA violation, and therefore was an employer for purposes of the Act.

### B.     Existence of an Agreement to Pay Overtime

Snell-Jones contends that Defendants violated the IWPCA by failing to honor their written agreement to pay her overtime. The IWPCA requires every employer, at least semi-monthly, "to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3. Wages are defined under the act as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2. Thus, the IWPCA "does not provide an independent right to payment of wages and benefits; instead, it

only enforces the terms of an existing contract or agreement." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012). "Accordingly, for a person to state a claim under the [IWPCA], he or she must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Id.*

In her complaint, Snell-Jones twice makes allegations concerning the existence of a written agreement. The essence of those allegations is that Hertz entered into a written contract with Snell-Jones and members of the putative class in which it agreed to pay them overtime "consistent with the requirements of the FLSA." (Compl. ¶¶ 70, 74.) Both Hertz and Hudson contend that an allegation that Hertz merely agreed to do what is required by existing law is insufficient to state an IWPCA claim. Indeed, several courts in this District have held that "to survive dismissal[,] the plaintiff must point to an agreement supporting the IWPCA claim that is more than an allegation that the employer is bound by existing overtime laws." *Brand v. Comcast Corp.*, No. 12 CV 1122, 2013 WL 1499008, at *6 (N.D. Ill. Apr. 11, 2013); *see also Pavur v. Ill. Bell Tel. Co.*, No. 15-cv-02796, 2016 WL 278886, at *3 (N.D. Ill. Jan. 21, 2016). But other courts in this District have found that that logic is more applicable to contracts because contracts require consideration, "which usually means that parties cannot contract to do things that they were already required to do." *Balmes v. Ill. Bell. Tel. Co.*, No. 15 C 2685, 2016 WL 1019764, at *7 (N.D. Ill. Mar. 15, 2016); *see also Wharton*, 912 F. Supp. 2d at 660. The IWPCA, however, applies to both contracts and agreements. And in Illinois, an agreement "is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons." *Balmes*, 2016 WL 1019764, at *7 (internal quotation marks omitted). Thus, "nothing prevents an employer and an employee from mutually assenting to follow the law." *Id.*; *see also Wharton*, 912 F. Supp. 2d at 660–61.

Given the broad understanding of the term "agreement" as used in the IWPCA, this Court concurs with the decisions finding that an agreement to pay overtime in accordance with existing overtime laws is a cognizable agreement for IWPCA purposes. Thus, having pleaded the existence of an agreement by Hertz to pay her overtime consistent with the FLSA, Snell-Jones has stated an IWPCA claim. Consequently, the Court denies Defendants' motion to dismiss her IWPCA claim.

### III.     Contract Claims

Snell-Jones also brings claims for breach of contract and breach of the covenant of good faith and fair dealing against Hertz based on its failure to honor the written contract to pay her overtime consistent with the FLSA's requirements.

To plead a breach of contract in Illinois, a plaintiff must allege facts showing: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Montgomery v. Scialla*, No. 15-cv-10840, 2017 WL 3720178, at *5 (N.D. Ill. Aug. 29, 2017) (internal quotation marks omitted). Hertz contends that the breach of contract claim must be dismissed because Snell-Jones did not sufficiently plead the existence of a valid and enforceable contract.

While Hertz argues in relation to Snell-Jones's IWPCA claim that an agreement to follow the law cannot form an agreement for IWPCA purposes, its argument carries more weight in the context of a breach of contract claim. Whereas Snell-Jones simply needed to show that she and Hertz mutually agreed that Hertz would pay her overtime to state an IWPCA claim, for a breach of contract claim, Snell-Jones has to sufficiently plead that the two entered into a contract supported by valid consideration. Yet performance of a preexisting legal duty is not adequate consideration to form a contract. *Johnson v. Maki & Assocs., Inc.*, 682 N.E.2d 1196, 1200 (Ill.

App. Ct. 1997) ("The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment.").

Snell-Jones alleges that there was a contract consisting solely of Hertz's promise to pay overtime consistent with the FLSA. Paying overtime, of course, was something that Hertz was required to do by virtue of the FLSA and the IMWL. Snell-Jones cannot plead a valid and enforceable contract based solely on Hertz's promise to abide by existing employment laws. For that reason alone, her breach of contract claim fails. Similarly, because her claim for breach of the covenant of good faith and fair dealing requires the existence of a valid and enforceable contract, that claim fails as well, and the Court need not address the choice-of-law issue that Hertz raises in its opposition.

There is another impediment to Snell-Jones basing her contract claims off Hertz's purported promise to abide by the FLSA—albeit one not raised by either party. Courts in this District have "held that the FLSA preempts common law claims for unpaid overtime." *Kyriakoulis v. DuPage Health Ctr., Ltd.*, No. 10 C 7902, 2011 WL 2420201, at *1 (N.D. Ill. June 9, 2011); *see also Shages v. MDScripts Inc.*, No. 18 CV 5395, 2019 WL 2327651, at *3 (N.D. Ill. May 31, 2019). Thus, common law claims have been found to be preempted by the FLSA where they "rest on the same factual foundation and seek the same relief as an FLSA claim." *Richmond v. Advanced Pain Consultants, S.C.*, No. 15 C 479, 2015 WL 4971040, at *3 (N.D. Ill. Aug. 18, 2015). That appears to be the case here. It is possible for Snell-Jones to plead her contract claims in a way that does not raise preemption issues, for example, by alleging the existence of a contract that does more than what the FLSA requires. *Shages*, 2019 WL 2327651, at *3 ("[W]here parties contract to provide more protection than the FLSA requires, the claims can coexist."). For now,

because Snell-Jones fails to plead the existence of a valid and enforceable contract, that is sufficient to dismiss her contract claims without prejudice.

## CONCLUSION

For the foregoing reasons, Hertz's motion to dismiss (Dkt. No. 20) is granted in part and denied in part. Snell-Jones's breach of contract and breach of the covenant of good faith and fair dealing claims are dismissed without prejudice. Hudson's motion to dismiss (Dkt. No. 34) is denied.

ENTERED:

Dated:  March 13, 2020                    _____
                                          Andrea R. Wood
                                          United States District Judge